OPINION
Plaintiff (taxpayer) appeals from a magistrate's Decision that established the real market value of his personal residence as of January 1, 1998. Taxpayer asserts that the property has many defects and needs many repairs, all of which reduce the value to a lower amount. Polk County (the county) intervened and defended the magistrate's Decision. Trial was held May 19, 2000, in the courtroom of the Oregon Tax Court, Salem.
 FACTS
The subject property is a small older home, approximately one block off of Orchard Heights Road on Karen Way in northwest Salem. The improvements are situated on a sloping hillside lot that suffers from drainage problems. The original portion of the home was constructed in 1948 with a half basement and garage on the basement level. A later addition expanded the kitchen and dining areas. The home has one bedroom and one and a half baths upstairs. Part of the basement was improved for use as a bedroom with an adjacent bath. However, as of the assessment date, the basement bathroom walls were unfinished and the sump pump was inoperable. Taxpayer claims that the basement bedroom was not useable as such because it has only one exit. It does have a window, but it is below ground level and does not have enough clearance for escape in the case of fire.
 ISSUE
What is the real market value of the subject property as of January 1, 1998?
 ANALYSIS
Taxpayer's evidence mostly addressed the physical ills of the property, which are many. He supported his testimony with estimates and quotes for installing supporting beams, repairing or replacing the roof, repairing the chimney, waterproofing the basement, improving the drainage, installing retaining walls, making ceiling repairs, painting, electricity, and a number of others. Taxpayer's total estimates exceeded $35,000.
Taxpayer purchased the property in 1994 for $89,900. He testified that he did not make a proper investigation prior to purchase and paid too much for the property. Taxpayer failed to investigate because another buyer was onsite ready to make an offer and he was afraid he would lose the opportunity to purchase the home. Taxpayer discovered many of the defects after the purchase. He also testified that some of the problems apparent at the time of purchase have grown worse. Taxpayer believes that the subject property has a real market value of $65,000 as of the assessment date in question.
An appraiser from the Polk County Assessor's office testified for the county. He acknowledged that the subject property needs lots of work and he agrees generally with the cost estimates of taxpayer. However, the cost of repairs alone do not establish the value of the property. The appraiser used seven comparable sales of similar size and age from the neighborhood. He was unable to find any comparable sale in as poor condition as the subject. Therefore, he used the comparable sales to estimate the market value of the subject property as if it were repaired. From that amount, he then deducted the cost of the repairs to arrive at an estimated value for the subject property in its condition as of January 1, 1998.
Based on this approach, the appraiser indicated that the subject property in repaired or "average" condition would have a value between $105,000 to $116,000. This is based on comparable sales that ranged from $67.42 to $98.54 per square foot, with an average square foot sale price of $74.96 (excluding the highest sale). Determining that the subject property had 1,652 square feet of living space including the downstairs bedroom and bathroom, the appraiser decided that the subject property would have a real market value of approximately $105,000 or $63.56 per square foot.
The appraiser did not deduct all of taxpayer's estimated repair expenses because, if all of those expenses were incurred, the house would be in better-than-average condition. The appraiser estimated that the cost of the repairs required to place the property in average condition was between $26,000 and $28,000. When these amounts are deducted from $105,000, it indicates a value for the subject property of between $77,000 to $79,000. Hence, the $78,010 now on the tax rolls appears correct.
One weakness the court sees in the county's position is that all of its comparable sales contain three bedrooms. The court finds that the basement bedroom in the subject would be useable as a bedroom only if additional expenses were incurred to increase the size of the window openings so it could provide a means of escape. On the other hand, two of taxpayer's comparable sales were two bedroom homes. Both of those homes, though smaller than the subject, sold for $91.85 and $91.55 per square foot. Taxpayer's other two sales, three bedroom homes, sold for $75.07 and $64.62 per square foot. The assessed value for the subject property of $78,010 reflects a value of $47.22 per square foot.
Based upon the preponderance of the evidence, the court is not persuaded that the real market value of the subject property as of January 1, 1998, was less than $78,010. In reaching this conclusion, the court is aware that in the real estate market there is usually a range of value, rather than a single specific number. In this case, it would appear that the range of the subject property was between $75,000 and $85,000. Where the property falls in that particular range may depend upon whether a prospective purchaser is handy with tools and welcomes such projects or would have had to hire everything done. Taxpayer is limited in what he can do and consequently appears to have lost ground since purchasing the property in 1994. However, the market evidence clearly supports a value of $78,010.
The court finds that the real market value of the subject property as of January 1, 1998, was $78,010. Costs to neither party.